UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x    NOT FOR PUBLICATION

IN RE:                                                                                   Chapter 13

**MICHAEL CARLIN**,                                                    Case No. 08-11689

                                Debtor.
---------------------------------------------------------------x

### MEMORANDUM DECISION AND ORDER DENYING DEBTOR'S MOTION
### TO DISALLOW CLAIMS 4 AND 9

*APPEARANCES:*

Michael D. Carlin, Esq.
26 Broadway
21st Floor
New York, NY 10004
*Debtor Pro Se*

Paul J. Hooten
PAUL J. HOOTEN & ASSOCIATES
5505 Nesconset Highway, Suite 203
Mt. Sinai, NY 11766
*Attorney for American Express*

       Michael Carlin, the chapter 13 debtor ("Debtor"), filed a motion for an order disallowing proofs of claim ("POC") 4 and 9 filed by American Express Travel Related Services Co., Inc. and American Express Centurion Bank (collectively "American Express") in the amounts of $1,507.09 and $17,964.07, respectively, on the grounds that (i) they lack adequate documentation, (ii) the Debtor never agreed to pay the interest and penalty charges assessed by American Express, and (iii) the charged rates are usurious and penal. After the two claims were filed, the Debtor sent a letter to American Express requesting additional documentation supporting the proofs of claim. The Debtor then filed the claims objection that is the subject of this Decision and Order. In response to the Debtor's letter and objection, American Express corresponded with the Debtor, amended the claims to include account statements and the account

agreement, and filed a response to the objection. For the reasons explained below, the motion is DENIED.

## BACKGROUND

The Debtor opened these accounts in the 1990s and had accrued penalties and interest on unpaid account statements. On December 15, 2005, the Debtor entered into a debt management agreement with American Express. The agreement provided that the Debtor would continue to make payments in a stipulated amount of $347 per month on the account later included in POC #9 and $53 per month on the account later included in POC #4. In exchange, American Express would waive interest and penalties for the repayment period, provided, however, that if the Debtor missed more than two payments in a rolling twelve-month period, he would no longer be eligible for the interest and fee waiver.

Debtor asserts he complied with this agreement until he filed his chapter 13 petition on May 5, 2008, at which point he stopped making the agreed-upon payments. By that point, the Debtor asserts that his payments reduced the balance on the account in POC #9 from $15,494.03 to $6,118.72, and from $2,475.25 to $927.51 on the account in POC #4.

The Debtor scheduled undisputed debts to American Express on these two accounts in substantially lower amounts than American Express included in its proofs of claim. American Express, however, filed two POCs seeking $1,471,31 (POC #4) and $17,964.07 (POC #9). The Debtor asserts that the claims, as filed, lack sufficient supporting documentation. In addition, he asserts that even if there is adequate documentation supporting the claims, because he never agreed to the additional charges, the added charges should be disallowed. In the alternative, he argues that the interest rate charged by American Express is usurious and should be disallowed.

2

For its part, American Express agrees that it entered into a settlement agreement with the Debtor to settle previous arrearages and agreed to waive interest and penalties as part of that arrangement, but it asserts that when the Debtor stopped making payments under the agreement, it filed a claim for the full amount owed. American Express argues that by using his American Express credit card, the Debtor agreed to abide by the terms of American Express's credit card agreement, including the provisions authorizing American Express to charge interest. Finally, it argues that credit card financing charges are not subject to New York's usury laws.

## DISCUSSION

### A.    Documentation Under Federal Rule of Bankruptcy Procedure 3001

Under Rule 3001(c), if a claim is based on a writing, the claimant must attach an original or duplicate to the proof of claim. FED. R. BANK. P. 3001(c). If the proof of claim satisfies Rule 3001's requirement, it is prima facie valid. FED. R. BANK. P. 3001(f). While there is a split in authority on what documentation is required to evidence credit card debt, those courts that have allowed summaries require that the summary include the amount of the debt, the name and account number of the debtor, be in the form of a business record, and, if the claim includes charges such as interest, late fees, or attorney's fees, a statement breaking down those elements. *See In re Cluff*, 313 B.R. 323, 335 (Bankr. D. Utah 2004). But even if the claimant did not attach appropriate documentation, the claim is not necessarily expunged; rather, it is just not granted prima facie validity. *See In re Porter*, 374 B.R. 471, 483 (Bankr. D. Conn. 2007). Under *Porter*, if a debtor objects to a claim based on insufficient documentation, the creditor must make some response; if the creditor does not respond, the objection will be sustained. *Id.*

American Express amended the claims after the Debtor filed his objection and attached a substantial amount of documentation to the claims, including the account statements evidencing

3

the amount owed on both accounts, the account agreements, and sworn affidavits attesting to the claims. The claims are therefore entitled to prima facie validity under Rule 3001(f). The Debtor has offered no other evidence rebutting the validity of the claims. The accounts were never assigned, so there is no issue regarding standing. Therefore, the objection based on lack of adequate documentation is OVERRULED.

      B.      **Interest and Additional Charges on Credit Cards**

The Debtor and American Express entered into a debt management agreement in December 2005. The Debtor agreed to pay American Express a pre-set fee every month until the past debt was forgiven, in exchange for which American Express would waive interest and fees during the repayment period. The agreement also provided that if the Debtor missed any two payments during a rolling twelve-month period, he would no longer be eligible for the interest and fee waiver. The Debtor admits that he stopped making payments to American Express under his agreement once he filed for bankruptcy. The Debtor nevertheless asserts that he never agreed to pay the additional charges. American Express asserts that once the Debtor stopped making payments, it asserted claims for the full amounts owed on both accounts and that the Debtor agreed to this arrangement pre-petition.

A credit card user implicitly agrees to the terms of use whenever he uses the card. *See, e.g.*, *Anonymous v. JP Morgan Chase & Co.*, 2005 U.S. Dist. LEXIS 26083, at *9-10 (S.D.N.Y. Oct. 31, 2005) ("Using a credit card and making payments to the credit provider binds the cardholder to the terms and conditions of card use."). The Debtor cannot now claim that he should not have to pay those charges. In addition, Debtor has not come forward with competent evidence rebutting the validity of these charges. The objection to the interest charges is OVERRULED.

In the alternative, the Debtor argues that the interest rate charged by American Express is usurious. Specifically, he notes that POC #9 contains an interest rate of 27.99% and POC #4 contains an interest rate of 18.24%. American Express argues that New York General Obligations Law § 5-501, which governs usury, does not apply to service charges on revolving credit card agreements. Under New York law, "service charges on retail credit sales are generally defined as charges 'for the privilege of purchasing on credit,' expressed as a time-price differential." *Zachary v. R.H. Macy & Co., Inc.*, 31 N.Y.2d 443, 457 (1972). "Under the revolving charge account the account is the product of a single written agreement between retailer and customer which allows credit purchases from time to time. Finance charges, instead of being pre-computed, as in a closed-end contract, are calculated periodically as a percent of monthly balances." *Id.* at 458. Such arrangements are exempt from usury laws, because the charge is not considered interest; rather, "the finance charge is treated as the difference between the cash price and time price, thus affording the seller a return on his investment; and in neither case is the resulting finance charge looked upon as interest." *Id.*

The agreement between American Express and the debtor is a revolving charge account because it is the product of a single agreement that allowed purchases from time to time. The rate American Express charged the debtor is therefore not subject to New York's usury laws. The Debtor, through the use of the American Express card, is obligated to pay the finance charges. Because New York's usury laws do not apply to the card charges, the objection to the finance charges as usurious or penal is OVERRULED.

//
//
//
//
//
//

**IT IS SO ORDERED**

Dated: New York, New York
 February 10, 2009

                                       **/s/Martin Glenn**
                                          MARTIN GLENN
                              United States Bankruptcy Judge